# EXHIBIT

# A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TIFFANY SELBY, IRINA VORONINA, and JOANNA KRUPA, | |
| Plaintiffs, | Case No. _____ |
| - against - | |
| 109 RESTAURANT CORP., d/b/a CAFÉ ROYALE and JOHN DOXEY, | **COMPLAINT** (Jury Trial Demanded) |
| Defendants. | |

Plaintiffs TIFFANY SELBY ("Selby"), IRINA VORONINA ("Voronina"), and JOANNA KRUPA ("Krupa") (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants 109 RESTAURANT CORP., d/b/a CAFÉ ROYALE and JOHN DOXEY (collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip club Café Royale, located in East Farmingdale, New York.

2.     As detailed below, Defendants theft and unauthorized use of Plaintiffs' images, photos and likeness (collectively, "Images"), constitutes, at minimum: a) violation of the section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; c) violation of New York's Deceptive

- 1 -

Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.     In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) insofar as there is complete diversity of the parties to this action, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.     As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models, who reside California or Florida.

6.     According to publicly available records, Defendant 109 Restaurant Corp. ("109 Restaurant") is corporation formed under the laws of the State of New York, and Defendant John Doxey ("Doxey") is the C.E.O. of 109 Restaurant Corp. Upon information and belief, 109 Restaurant Corp. operates Café Royale in Suffolk County, New York.

7.     Venue is proper in the United States District Court for the Eastern District of New York because Café Royale is located in Suffolk County, New York.

8.     All parties have minimum contacts with Suffolk County, and all of the alleged causes of action arose and accrued in Suffolk County, New York.

9.     The center of gravity for all relevant events alleged in the complaint is predominately located in Suffolk County, New York.

## PARTIES

*Plaintiffs*

10.     Plaintiff Selby is a well known professional model, and a resident of Duval County, Florida.

11.     Plaintiff Voronina is a well known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Krupa is a well known professional model, and a resident of Los Angeles County, Cailifornia.

*Defendants*

13.     According to publicly available records, Defendant 109 Restaurant is a corporation organized under the laws of the State of New York, has a principle place of business at 101 Route 109, East Farmingdale, New York 11735, and operates Café Royale, a strip club located Suffolk County, New York where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

14.     Upon information and belief, Defendant Doxey is a resident of the State of New York and is identified by the New York Department of State - Division of Corporations, as the Chief Executive Officer of 109 Restaurant.  Upon information and belief, Defendant Doxey, in his capacity as C.E.O. of 109 Restaurant, maintains operational control over Café Royale, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

15.     As set forth immediately below, each of the Plaintiffs are extremely well known professional models who each earn their livelihood modeling and selling their Images to companies, magazines and individuals for the purpose of advertising products and services.

- 3 -

16.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

17.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by 109 Restaurant in order to make it appear that they worked at Café Royale, or endorsed Café Royale.

18.    In the case of each Plaintiff, such appearance was false.

19.    Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

**_Plaintiffs' Backgrounds and Careers_**

20.    Selby is a well known model and actress, the _Playboy_ Playmate of the Month for July 2007, and has appeared on many television shows, including:  _The Girl's Next Door_, _Bikini Destinations_, _Poor Man's Bikini Beach_ (which she hosted), _Last Comic Standing_ (model), and _Deal or No Deal_ (case model).  Selby has likewise appeared in commercials for brands such as Guitar Hero 5 (with Hugh Hefner), Ab Lounge, and Reflections Boutique, and has appeared in countless magazines and catalogs.  Selby has also served as a spokesmodel for brands including Budweiser, Suzuki and Bang Vodka, and done additional promotional work on behalf of Skoal Promotion, Stacker 2 Promotion, Hawaiian Tropic Promotion, and Guitar Center Grand

- 4 -

Opening.  In addition, Selby has twice been named Miss Hawaiian Tropic.

21.    That we know of, Selby is depicted in the photos in Exhibit "A" in order to promote Café Royale.  These photos depict Selby in a sexually suggestive Halloween costume, and were intentionally altered in order to make it appear that Ms. Selby was either a stripper working at Café Royale, or that she endorsed Café Royale.  This appearance is bolstered by the copy Café Royale has put beside Ms. Selby, which advertises the Café Royale Halloween party.

22.    Selby has never been employed at Café Royale, has never been hired to endorse Café Royale, and has received no remuneration for Café Royale's unauthorized use of her Images.

23.    Voronina is an internationally renowned model and actress who was named *Playboy's* Playmate of the Month for September 2001.  Voronina has modeled for international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, Sisley & Detour, to name but a few.  In addition, Ms. Voronina has millions of visual impressions around the globe via the covers and pages of worldwide magazines including: *FHM*, *Maxim*, *Playboy* (in 20 countries), *Max* (Italy), *Ocean*, *Shape*, *944*, *Knock-Out*, *Q* (UK), *People* (Australia), and most recently *Kandy*, *Rukus*, *Vape* and *Browz* magazines.   In addition to being a model, she has appeared in various television programs and films, and has more than 2.3 million followers on Facebook, Instagram, Twitter and YouTube.[1]

24.    That we know of, Voronina is depicted in the photos in Exhibit "B" in order to promote Cafe Royale.  These photos depict Ms. Voronina in a sexually suggestive camouflage outfit, and a sexually suggestive Halloween costume, and were intentionally altered in order to make it appear that Ms. Voronina was either a stripper working at Café Royale, or that she

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

endorsed Café Royale. This appearance is bolstered by the copy Café Royale has put beside Ms. Voronina, one of which advertises a party for returning U.S. Veterans, and the other of which advertises the Café Royale Halloween party.

25.     Voronina has never been employed at Café Royale, has never been hired to endorse Café Royale, and has received no remuneration for Café Royale's unauthorized use of her Images.

26.     Krupa is a world renowned model, actress, and television personality. As an actress, Krupa has appeared in the film *Max Havoc: Curse of the Dragon*, and the television show *Superstars*, and also appeared as a contestant on Season 9 of ABC's *Dancing with the Stars*. In addition, since 2010 Krupa has been head judge of *Poland's Next Top Model*, and is a cast member of Bravo's *The Real Housewives of Miami*. As a model, Krupa has twice appeared on the cover of *Playboy*, and has also appeared on numerous other magazine covers, including *Personal*, *Steppin' Out*, *Envy*, *Shape*, *FHM*, *Stuff*, *Inside Sport*, *Teeze*, and *Maxim*. Krupa has been named the "Sexiest Swimsuit Model in the World," and in 2011 Maxim ranked her #55 in its Hot 100. In 2004-2005, she was voted *Maxim's* "Model of the Year" in Germany. Krupa also models in ads for PETA.

27.     That we know of, Krupa is depicted in the photos in Exhibit "C" to promote Café Royale. This Image depicts Krupa topless, and in nothing more than a thong and boots, above the copy: "THANK GOD I AM FABULOUS!" Beside the photo the copy reads: "Come to Café Royale and see why I am so Fabulous! TGIF!!" This sexually suggestive Image was intentionally altered to make it appear that Krupa was either a stripper working at the club, or that she endorsed the club, an appearance bolstered by the copy Café Royale choose to put beneath and beside Ms. Krupa.

28.     Krupa has never been employed at Café Royale, has never been hired to endorse Café Royale, and has received no remuneration for Café Royale's unauthorized use of her Images.

**Defendants' Business**

29.     Upon information and belief, Defendants operate Café Royale in East Farmingdale, New York, where they engage in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

30.     Upon information and belief, and in furtherance of its promotion of Café Royale, Defendants own, operate and control the Café Royale website, located at www.caferoyalenewyork.com (hereinafter, the "Café Royale website").   In addition, and upon information and belief, Defendants own, operate, and control the Café Royal Facebook, Twitter, and Instagram accounts.

31.     Upon information and belief, Defendants use the Café Royale website, and Facebook, Twitter, and Instagram accounts, to promote Café Royale, and attract patrons to Café Royale.

32.     Defendants do this for their own commercial and financial benefit.

33.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Café Royale or endorsed Café Royale.

34.     Defendants used Plaintiffs' Images, and created the false impression that they worked at Café Royale, or endorsed Café Royale, in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing,

- 7 -

and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

35.     As Defendants were at all times aware, at no point has any Plaintiff ever been affiliated with or employed by Café Royale, and at no point have any of the Plaintiffs ever endorsed Café Royale.

36.     All of Defendants activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for its use of their Images.

37.     As such, Plaintiffs have never received any benefit for Defendants use of their Images.

**Standard Business Practices in the Modeling Industry**

38.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

39.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**Defendant's Theft of Plaintiff's Images**

40.     As detailed above, Defendants knowingly, and without the prior consent of any of

- 8 -

the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote Café Royale by and through various marketing and promotional mediums including, without limitation, the Café Royale website, Twitter, Facebook, and Instagram.

41.     Upon information and belief, Defendants published Plaintiffs' Images in order to create the false impression that Plaintiffs worked at Café Royale, or endorsed one or more of the Clubs.

42.     Upon information and belief, Defendants did so in order to attract clientele to their Clubs, promote their Clubs, and thereby generate revenue for Defendants.

43.     Upon information and belief, Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Café Royale.

44.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

45.     At no point were any of the Plaintiffs ever affiliated with Café Royale, or Defendants and at no point was any Plaintiff ever contacted by Defendants, or any representative of Defendants, to request the use of any of Plaintiffs' Images.

46.     Defendants never obtained, either directly or indirectly, permission or consent to use any of Plaintiffs' Images.

47.     No Plaintiff was ever paid its use of her Images on any promotional materials, including the Café Royale website or social media accounts.

48.     Defendants used Plaintiffs' Images without their consent, and without providing

- 9 -

remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

49.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq.*:**
**False Endorsement)**

50.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     The provisions of the Lanham Act, 215 U.S.C. §1125 *et seq.* apply to Defendants and protect Plaintiffs from the conduct described herein.

52.     Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at Café Royale or endorsed Café Royale.

53.     This was done to promote and attract clientele to the Café Royale, and thereby generate revenue for the Defendants.

54.     Thus, this was done in furtherance of Defendants' commercial benefit.

55.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, Café Royale, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Café Royale.

56.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Café Royale.

57.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of Café Royale, and the goods and services provided by Café Royale.

58.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### SECOND CAUSE OF ACTION
**(Violation of N.Y. Civ. Rights Law §§ 50-51)**

59.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.     As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing altered Images of Plaintiffs, which made it appear as though Plaintiffs were employed at Café Royale, or endorsed the club.

61.     At all relevant times, the Café Royale website and social media accounts were used and operated by Defendants for advertising and trade purposes, were designed to attract business to the Café Royale and generate revenue for Defendants and, upon information and belief, did in fact attract clientele and generate business for Café Royale.

62.     At no point did Defendants ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on the Café Royale website or social media account.

63.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Clubs.

64.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

65.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

66.     Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

67.     In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

68.     In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

### THIRD CAUSE OF ACTION
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

69.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

70.     Defendants operated the Café Royale website and social media accounts in order to promote Café Royale, to attract clientele to Café Royale, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the Café Royale website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

71.     Defendants published Plaintiffs' Images on the Café Royale website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at Café Royale, or endorsed the club.

72.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the

public as to Plaintiffs' employment at and/or affiliation with Café Royale.

73.     As Defendant were at all times aware, Plaintiffs never worked at Café Royale, never endorsed Café Royale, and never had any affiliation with Café Royale.

74.     Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at Café Royale, or endorsed Café Royale.

75.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on the Café Royale website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

76.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

77.     Plaintiff hereby repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

78.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote Café Royale to the general public and potential clientele of Café Royale.

79.     Defendants' publication of said Images constitutes a representation that Plaintiffs were either employed by Café Royale, or that they endorsed or had some other affiliation with the club, and it was Defendants' intention to create this false impression with the public.

80.     None of these representations were true.

- 13 -

81.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Café Royale, had no affiliation with Café Royale, had not consented to the use of their Images, and had not been compensated for the use of their Images.

82.     In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Café Royale, had no affiliation with the club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

83.     Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

84.     Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses each Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

85.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

86.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication

- 14 -

of the Images support.

87.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

88.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

89.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

90.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the Café Royale website and social media accounts.

91.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

92.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

93.    In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

94.    Defendants violated said duty by its negligent hiring, screening, retaining,

supervising, and/or training of its employees and agents.

95.     As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Conversion)

96.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

98.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

99.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

100.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

101.     As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

102.     Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Café Royale, or endorsed the club.

103.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

104.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

105.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Café Royale.

106.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

107.    As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

108.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109.    Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

110.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

111.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Café Royale, or endorse the club, Defendants have not compensated Plaintiffs.

- 17 -

112.   Plaintiff is therefore entitled to reasonable compensation for Café Royale's unauthorized use of their Images to promote Café Royale.

## DEMAND FOR JURY TRIAL

113.   Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       October 13, 2015

                          THE CASAS LAW FIRM, P.C.

                          By: /s/ John V. Golaszewski
                             John V. Golaszewski, Esq.
                             1745 Broadway, 17th Floor
                             New York, New York
                             T: 855.267.4457
                             F: 855.220.9626

                             *Attorneys for Plaintiffs*

- 18 -

# EXHIBIT A

IRINA VORONINA





Cafe Royale LI
November 25  2014 near Commack  NY

Tomorrow!!! Come celebrate Thanksgiving in the
sexiest way possible. Right here at the Cafe Royale!





TIFFANY SELBY        IRINA VORONNA

















(https://caferoyalenewyork.files.wordpress.com/2015/06/january-2012.jpg)

# EXHIBIT B

Case 2:15-cv-05880-LDW-AKT   Document 1-1   Filed 10/13/15   Page 6 of 11 PageID #: 25

IRIMA
VORONIMA



 **Cafe Royale LI**
May 22, 2013 ·

Café Royale wants to give back to the brave soldiers
that have sacrificed so much for our freedom. Help us
welcome home our hero's on May 30th from noon to
4am with amazing drink specials. All proceeds will be
donated. Thanks in advance for your support.



Add Friend          Follow

IRINA VOROMINA





Cafe Royale LI
November 25 2014 near Commack, NY ·

Tomorrow!!! Come celebrate Thanksgiving in the
sexiest way possible. Right here at the Cafe Royale!





TIFFANY SELBY    IRINA VORONINA













(https://caferoyalenewyork.files.wordpress.com/2015/06/january-2012.jpg)

http://caferoyalenewyork.com/past-adsevents/

**EXHIBIT C**

JOANNA KRUPA







**Cafe Royale LI**
February 15, 2013 ·

Come to Cafe Royale and see why I am so Fabulous!
1GIF!!

Like · Comment · Share

